IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA              :

              v.                       :              CRIMINAL NO. 13-195

PHILIPPE JEANNARD                     :


*GOVERNMENT'S GUILTY PLEA MEMORANDUM*

I.      **INTRODUCTION**

              On April 22, 2013, defendant Philippe Jeannard was charged, by way of
Information, having waived prosecution by indictment, Criminal No. 13-195, with, in **Count
One**, fraud in connection with identification information, in violation of Title 18, United States
Code, Section 1028(a)(7), in connection with his impersonation of an Air France pilot while
boarding a US Airways flight from Philadelphia to West Palm Beach, Florida.  Mr. Jeannard is
scheduled to appear before the Court on Wednesday, May 8, 2013 for his arraignment and plea.

II.     **SUMMARY OF PLEA AGREEMENT**

              The government and the defendant have entered into a written guilty plea
agreement.  A copy of the plea agreement is attached hereto as Exhibit A.

              In summary, the essential elements of the plea agreement are as follows:

              A.      Mr. Jeannard agrees to plead guilty to Count One of the Information.

              B.      Mr. Jeannard agrees to pay the special victims/witness assessment in the
amount of $100 at such time as directed by the Court.

C.     Mr. Jeannard agrees that fines, interest or other payments in this case do not constitute extraordinary acceptance of responsibility or provide a basis to seek a downward departure from the applicable Sentencing Guideline range.

D.     Pursuant to USSG § 6B1.4, the parties enter into the following stipulation under the Sentencing Guidelines Manual.  The parties agree that they are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct and characteristics, criminal history, adjustments and departures; that this stipulation is not binding upon either the Probation Department or the Court; and that the Court may make factual and legal determinations that differ from the stipulation and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

a.     The parties agree that Mr. Jeannard has demonstrated acceptance of responsibility for his offense conduct making him eligible for a 2-level downward adjustment under Guideline Section 3E1.1(a).

E.     In exchange for the undertakings made by the government in entering this plea agreement, Mr. Jeannard voluntarily and expressly waives all rights to appeal or collaterally attack his conviction, sentence, or other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.  The nature of the agreement relating to Mr. Jeannard's waiver of his rights to appeal are set forth at length in paragraph 10 of the plea agreement.

a.     Notwithstanding this waiver provision, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

-2-

    b.  If the government does not appeal, then notwithstanding this waiver, the defendant may file a direct appeal but may raise only claims that:

      (1)  his sentence exceeds the statutory maximum as set forth in paragraph 3 of the guilty plea agreement;

      (2)  the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or

      (3)  challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court.

    c.  Notwithstanding this waiver, the defendant may file a petition for collateral relief under 28 U.S.C. § 2255, but may only raise a claim that the attorney who represented him at the time of the execution of this agreement and the entry of his guilty plea provided constitutionally ineffective assistance during any part of the representation.

    F.  Mr. Jeannard is satisfied with the legal representation provided by his lawyer; he and his lawyer have fully discussed this plea agreement; and he agrees to plead guilty because he admits that he is guilty.

    H.  Mr. Jeannard, who is not a citizen of the United States, has discussed with his attorney the immigration consequences of his guilty plea and understands that his guilty plea in this case will result in his being subject to immigration proceedings and will likely result in him being removed from and prevented from ever returning to the United States.

    U.  This guilty plea agreement contains no additional promises, agreements or understandings other than those set forth in this written guilty plea agreement, and no additional promises, agreements or understandings will be entered into unless in writing and

signed by all parties.

III.    **ELEMENTS OF THE OFFENSE**

**Title 18, United States Code, Section 1028(a)(7) (fraud in connection with identification information - Count 1)**

The government must prove the following elements beyond a reasonable doubt:

1.    that the defendant transfers, possesses or uses;
2.    a means of identification of another person;
3.    with the intent to commit, or to aid or abet, any unlawful activity that is a violation of federal law, or that constitutes a felony under applicable state or local law
4.    that the defendant acts without legal authority;
5.    that the defendant acts knowingly; and
6.    the transfer or use of the means of identification is in or affects interstate or foreign commerce.

IV.    **MAXIMUM SENTENCE**

**Count 1 - 18 U.S.C. § 1028(a)(7) (fraud in connection with identification information - Count 1)**
Five years' imprisonment, a three year period of supervised release, $250,000 fine, and a $100 special assessment.

The maximum statutory penalty Philippe Jeannard faces a maximum of 5 years imprisonment, a three year period of supervised release, $250,000 fine and a $100 special assessment.

V.    **FACTUAL BASIS FOR THE GUILTY PLEA**

The government would prove the following facts beyond a reasonable doubt if

this case were to proceed to trial:

On March 20, 2013, Philippe Jeannard, wearing an Air France shirt with

captain's epaulets and having in his possession an altered Air France identification card that had

belonged to his mother, a former Air France employee, with his photograph and indicating that

he was an A380 crew member, gained access to the cockpit, a restricted area, of US Airways

-4-

1935, a flight from Philadelphia to West Palm Beach, Florida, by pretending to be an Air France pilot.

On March 20, 2013, Jeannard flew on US Airways Flight 755 from Paris to Philadelphia.  He was then scheduled to fly to West Palm Beach on US Airways Flight 1935. Jeannard passed through airport TSA security, using his French passport for identification. Surveillance photographs show that he did not go through an airline crew line, and he was wearing a sweater that did not have any indication that he was a pilot for an airline.

Once through security, Jeannard removed his sweater and was wearing an Air France shirt with captain's epaulets and dark pants.  Jeannard went to gate agent Vanique La Caille for US Airways Flight 1935 and asked for an upgrade to first class.  He was informed that first class was full and there were no upgrades available.  Jeannard began to argue with the gate agent, who called over US Airways Corporate Security Supervisor Perry Shore.  Shore came to the gate, noticed the Air France shirt and epaulets worn by Jeannard, and asked Jeannard if he worked for an airline.  Jeannard replied that he did, and then boarded the aircraft.

Once onboard the aircraft, one of the flight attendants noticed the Air France shirt and captain's epaulets worn by Jeannard and an Air France identification card clipped to Jeannard's clothes, and asked Jeannard if he wanted to speak to the pilots, a common courtesy offered to pilots flying on US Airways flights.  Jeannard left his bags in the aircraft galley and went into the cockpit, a restricted area of the aircraft to which passengers are not permitted to enter.

After entering the cockpit, Jeannard told the caption and the first officer that he was an Air France pilot and he tried to sit in the cockpit jumpseat.  The gate agent for Flight 1935

came into the cockpt, saw Jeannard there, and informed the pilot that Jeannard was not flying

jumpseat and had no paperwork to do so, but had a ticket for a seat in the main cabin.  At that

point, Jeannard was ordered to leave the cockpit.  Jeannard then argued with one of the flight

attendants about his bag that was going to be gate-checked, as the baggage compartments were

full.  Jeannard was ordered to leave the aircraft.  While at the Philadelphia airport awaiting the

next flight to Jeannard was interviewed by US Airways Security and admitted that he was not an

Air France pilot or an Air France employee.

        Jeannard was arrested by Philadelphia police officers.  While in custody, and

after being read his *Miranda* rights, Jeannard, still wearing an Air France shirt with pilot's

epaulets, admitted that the Air France identification card that he had on his person was his

mother's Air France identification card and that he had altered the card by putting his name and

photograph, as well as information that he was an A380 crew member, on that card, and admitted

that he had gone into the US Airways cockpit and asked the pilot and first officer if he could fly

in the jumpseat.

        Respectfully submitted,

        ZANE DAVID MEMEGER
        United States Attorney

        *K.T. Newton*

        K.T. NEWTON
        Assistant United States Attorney

Dated:  May 6, 2013

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.  13- |
| PHILIPPE JEANNARD | : | |

## GUILTY PLEA AGREEMENT

Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the defendant, and the defendant's counsel enter into the following guilty plea agreement.  Any reference to the United States or the government in this agreement shall mean the Office of the United States Attorney for the Eastern District of Pennsylvania.

1.	The defendant agrees to plead guilty to Count One of an information, waiving prosecution by indictment, charging him with fraud in connection with identification document, in violation of 18 U.S.C. § 1028(a)(7), all arising when the defendant knowingly and without lawful authority used a means of identification of another person, that is, a fraudulent Air France identification card of a former Air France employee, in connection with a felony under Pennsylvania law, that is, criminal trespass in violation of Title 18, Pennsylvania Consolidated States, Section 3503, by using that fraudulent Air France identification card for access to the cockpit of US Airways Flight 1935.  The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.

2.	At the time of sentencing, the government will:

        a.      Make whatever sentencing recommendation the government deems appropriate provided its recommendation is within the applicable Sentencing Guidelines range.

        b.      Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant;  address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

        c.      Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

        3.      The defendant understands, agrees, and has had explained to him by counsel that the Court may impose the following statutory maximum sentence: Count One (fraud in connection with identification document), five years' imprisonment, a three year period of supervised release), a $250,000 fine, and a $100 special assessment

        <u>Total Maximum Sentence</u> is: five years' imprisonment, a three year period of supervised release, $250,000 fine, and a $100  special assessment.

        The defendant further understands that supervised release may be revoked if its terms and conditions are violated.  When supervised release is revoked, the original term of imprisonment may be increased by up to 2 years per count of conviction.  Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

2

4.      The defendant agrees agrees that forfeiture, restitution, fine, assessment, tax, interest, or other payments in this case do not constitute extraordinary acceptance of responsibility or provide any basis to seek a downward departure or variance from the applicable Sentencing Guideline range.

5.      In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.  Accordingly:

a.      The defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs.  The defendant promises that his financial statement and disclosures will be complete, accurate, and truthful.

b.      The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.      The defendant agrees to pay the special victims/witness assessment in the amount of $100 at such time as directed by the Court.

7.      The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement.  No one has promised or guaranteed to the defendant what sentence the Court will impose.

8.      Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) the parties are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense

3

conduct, offense characteristics, criminal history, adjustments, and departures; (2) these

stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may

make factual and legal determinations that differ from these stipulations and that may result in an

increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

        (a) The parties agree and stipulate that, as of the date of this agreement, the

defendant has demonstrated acceptance of responsibility for his offense, making the defendant

eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

        9.     The defendant, who is not a citizen of the United States, understands that

his guilty plea in this case will result in his being subject to immigration proceedings, and will

likely result in him being removed from and prevented from ever returning to the United States.

The defendant has discussed with his [her] attorney the immigration consequences of his guilty

plea.  The defendant understands that the immigration consequences of this plea will be

determined in a separate proceeding before the immigration authorities, and that no one,

including his attorney or the district court, can predict to a certainty the effect of his conviction

on his immigration status.  The defendant nevertheless affirms that he wants to plead guilty

regardless of any immigration consequences of his plea, even if the result is his removal from the

United States.  Therefore, the defendant waives any and all challenges to his guilty plea and to

his sentence based on any immigration consequences, and agrees not to seek to withdraw his

guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea,

conviction, or sentence, based on any immigration consequences of his guilty plea.

10.     In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

a.     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

b.     If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only a claim:

(1)     that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above;

(2)     challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines; and/or

(3)     challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court. If the defendant does appeal pursuant to this subparagraph, no issue may be presented by the defendant on direct appeal other than those described in this subparagraph.

c.     Notwithstanding the waiver provision set forth in this paragraph, the defendant may file a petition for collateral relief under 28 U.S.C. § 2255, but may only raise a claim that the attorney who represented the defendant at the time of the execution of this

5

agreement and the entry of the defendant's guilty plea provided constitutionally ineffective assistance during any part of the representation.

11.     The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

12.     The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

13.     It is agreed that the parties' guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

ZANE DAVID MEMEGER
United States Attorney


PHILIPPE JEANNARD
Defendant

PETER F. SCHENCK
Chief, Criminal Division
Assistant United States Attorney


ELIZABETH TOPLIN
Counsel for Defendant

K.T. NEWTON
Assistant United States Attorney

Date: _____

6

Attachment

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13- |
| PHILIPPE JEANNARD | : | |

### ACKNOWLEDGMENT OF RIGHTS

I hereby acknowledge that I have certain rights that I will be giving up by pleading guilty.

1.    I understand that I do not have to plead guilty.

2.    I may plead not guilty and insist upon a trial.

3.    At that trial, I understand

a.    that I would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with my attorney, I would have the right to participate in the selection of that jury;

b.    that the jury could only convict me if all 12 jurors agreed that they were convinced of my guilt beyond a reasonable doubt;

c.    that the government would have the burden of proving my guilt beyond a reasonable doubt and that I would not have to prove anything;

d.    that I would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that I was guilty;

e.    that I would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if I could not afford to hire a lawyer, the court would appoint one for me free of charge;

f.    that through my lawyer I would have the right to confront and cross-examine the witnesses against me;

g.    that I could testify in my own defense if I wanted to and I could subpoena witnesses to testify in my defense if I wanted to; and

        h.     that I would not have to testify or otherwise present any defense if I did not want to and that if I did not present any evidence, the jury could not hold that against me.

        4.     I understand that if I plead guilty, there will be no trial and I would be giving up all of the rights listed above.

        5.     I understand that if I decide to enter a plea of guilty, the judge will ask me questions under oath and that if I lie in answering those questions, I could be prosecuted for the crime of perjury, that is, for lying under oath.

        6.     I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement.

        7.     Understanding that I have all these rights and that by pleading guilty I am giving them up, I still wish to plead guilty.

        8.     I acknowledge that no one has promised me what sentence the Court will impose. I am aware and have discussed with my attorney that, at sentencing, the Court will calculate the Sentencing Guidelines range (including whether any departures apply), and then, in determining my sentence, will consider the Guideline range and all relevant policy statements in the Sentencing Guidelines, along with other sentencing factors set forth in 18 U.S.C. § 3553(a), including

        (1) the nature and circumstances of the offense and my personal history and characteristics;

        (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

        (3) the kinds of sentences available;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

_____
PHILIPPE JEANNARD
Defendant

_____
ELIZABETH TOPLIN
Counsel for the Defendant

Dated: _____

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the Government's Guilty Plea Memorandum in this case was served upon defense counsel by United States Mail, via email on the date listed below, as follows:

> Elizabeth Toplin, Esquire
> Federal Defenders
> Attorney for defendant Philippe Jeannard

*K.T. Newton*

K.T. NEWTON
Assistant U. S. Attorney

<u>Dated</u>:  May 6, 2013